UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

YASIN REEDER,

Plaintiff,

v.

COUNTY OF WAYNE,

Defendant.

_____/

Case No. 15-cv-10177

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

UNITED STATES MAGISTRATE JUDGE
DAVID R. GRAND

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [25]**

**I. INTRODUCTION**

On January 16, 2015, Yasin Reeder ("Plaintiff") filed a Complaint and
Demand for Trial by Jury against Wayne County ("Defendant"). *See* Dkt. No. 1, p.
1 (Pg. ID No. 1). On January 30, 2015, Plaintiff submitted an Amended Complaint,
alleging ten violations of state and federal law: violations of the Family Medical
Leave Act (FMLA) (Counts I and II); violations of the Americans with Disabilities
Amendments Act (ADA) (Counts III and IV); violations of Title VII of the Civil
Rights Act of 1964 ("Title VII") (Counts V and VI); violations of Michigan's
Persons with Disabilities Civil Rights Act (PWDCRA) (Counts VII and VIII); and

-1-

violations of Michigan's Elliott-Larsen Civil Rights Act (Counts IX and X). Dkt. No. 3, pp. 10–22 (Pg. ID No. 30–42).

Presently before the Court is Defendant's Motion for Summary Judgment [25]. The matter is fully briefed and a hearing was held on April 5, 2016, where both parties presented their arguments on the Motion. For the reasons discussed herein, the Court will **GRANT** in part and **DENY** in part Defendant's Motion for Summary Judgment.

## II. BACKGROUND

From May 24, 1999 to May 7, 2014, Plaintiff worked as a Police Officer for the Wayne County Sheriff's Office. Dkt. No. 27, pp. 11, 17 (Pg. ID No. 369, 375). In his position, Plaintiff provided inmate security in Wayne County's jail facilities. Dkt. No. 25, p. 12 (Pg. ID No. 161). Plaintiff was required to work a minimum amount of overtime each week, six minutes of roll call prior to each shift, and was also subject to mandatory overtime due to the jail's understaffing. *Id*. This required overtime was covered by Plaintiff's collective bargaining agreement. *Id*. Officers in Plaintiff's position did not have the right to refuse overtime assignments. *Id*. at 14. Any refusal to work mandatory overtime would result in the officer being issued a Conduct Incident Report ("CIR"), documenting the officer's refusal to follow a direct order. *Id*.

-2-

In the last 24 months of his position, Plaintiff was disciplined 13 times for rule violations, culminating with his termination. Dkt. No. 25-2, pp. 2–3 (Pg. ID No. 183–84). In August 2012, Plaintiff received a one-day suspension, which was held in abeyance, for insubordination related to leave time. *Id.* at 2. He received another suspension in October 2012 for insubordination, conduct, and unsatisfactory performance. *Id.* Three months later, in January 2013, Plaintiff was orally reprimanded for a leave time and attendance issue. *Id.* Then in April 2013, Plaintiff was given a written reprimand, followed by a two-day suspension for a subsequent violation, which was held in abeyance, for insubordination and unsatisfactory conduct. *Id.* Plaintiff's third rule violation in April 2013 was a written reprimand for leave time and attendance. *Id.* In July 2013, Plaintiff received another written reprimand for unsatisfactory performance. *Id.*

The repercussions of rule violations gradually increased. In September 2013, Plaintiff was suspended without pay for unsatisfactory performance. *Id.* A month later, in October 2013, Plaintiff reported to his lieutenant that he was experiencing discomfort and feeling "sick to his stomach" as a result of conflict with a coworker.[1] Dkt. No. 25-14, p. 4 (Pg. ID No. 285). Plaintiff was suspended again

---

[1] The Arbitration Award describes the conflict as follows: A coworker had filed harassment charges against Plaintiff, while Plaintiff alleged that she had assaulted

that month, for three days without pay, again for insubordination and unsatisfactory performance. Dkt. No. 25-2, p. 2 (Pg. ID No. 183). Around this time, Plaintiff sought counseling services through the Employee Assistance Program (EAP). Dkt. No. 27-15, p. 8 (Pg. ID No. 493). He was not diagnosed with depression or anxiety at that time and did not notify anyone in his command that he was seeking counseling. *Id*.

In November 2013, Plaintiff was issued a written reprimand for refusal to follow direct orders and use of sick time that Plaintiff had not earned/did not have. Dkt. No. 25-14, p. 4 (Pg. ID No. 285); Dkt. No. 25-14, p. 4 (Pg. ID No. 285). Plaintiff was suspended for eight days without pay in January 2014, for nine instances where he refused overtime shifts in December 2013 and January 2014. Dkt. No. 25-14, p. 4 (Pg. ID No. 285). Four days after his January suspension, Plaintiff produced the first note from a physician, detailing that he suffered from atypical chest pain, situational anxiety, and work-related stress, and restricting Plaintiff to work no more than eight hours per day. Dkt. No. 25, p. 13 (Pg. ID No. 162). Plaintiff claims that he was also manifesting physical symptoms, including

---

and harassed him, creating a hostile work environment. Dkt. No. 25-14, p. 4 (Pg. ID No. 285). After Plaintiff complained about the situation, both he and his coworker were transferred from their assignments at Jail/Division I. *Id*. Plaintiff was moved to Jail/Division 2, while his coworker was moved to Jail/Division 3. *Id*.

-4-

high blood pressure, hair loss, loss of appetite, sleeplessness, vomiting, light-headedness, and dizziness.[2] Dkt. No. 27, pp. 12–13 (Pg. ID No. 370–71); Dkt. No. 27-3, p. 4 (Pg. ID No. 413). Plaintiff's physician recommended he visit a psychiatrist and psychologist, which he visited a couple weeks later and continued to see three to four times a month until he was terminated. Dkt. No. 27-3, p. 4 (Pg. ID No. 413).

Plaintiff submitted the January 27, 2014 doctor's note to personnel, where an employee allegedly time-stamped it,[3] made a copy for Plaintiff's file, and returned

---

[2] There are some troubling inconsistencies in Plaintiff's proffered reasons for his medical conditions. For instance, he argues that he "suffered from anxiety and depression, *beginning* with the murder of his brother and exacerbated by the suicide of an inmate" at the jail. Dkt. No. 27, p. 12 (Pg. ID No. 370) (emphasis added). However, Plaintiff's own testimony states that he did not witness the suicide until April 2014, over a year after he started refusing mandatory overtime and just one month before he was terminated. *See* Dkt. No. 27-15, p. 4 (Pg. ID No. 489). Furthermore, although Plaintiff's brother went missing in October 2013, his body was identified after Plaintiff had already been terminated. *Id.* Plaintiff had been refusing mandatory overtime for months before his brother even went missing. *See* Dkt. No. 25-2, pp. 2–3 (Pg. ID No. 183–84). Accordingly, the suicide Plaintiff witnessed and the murder of Plaintiff's brother do little to explain Plaintiff's symptoms appearing prior to April 2014. Nevertheless, given the lenient standard the Sixth Circuit utilized in *Festerman*, the Court finds that a reasonable jury may still find in Plaintiff's favor based on the fact that his depression and anxiety could have resulted from other causes, such as the conflict with his coworker or his father's cancer.

[3] Defendant disputes that a time-stamp on a document is evidence of submission, since the time-stamp is left on the desk of the personnel office. Dkt. No. 25, p. 19, n.24 (Pg. ID No. 168). Defendant submitted an unsigned affidavit

the original note to Plaintiff without further instruction. *Id*. It is undisputed that Plaintiff never received or filled out the required paperwork to take a leave of absence under the FMLA, although Plaintiff had previously completed FMLA leave paperwork for a leave of absence following a car accident in 2008.[4] Dkt. No. 27-3, p. 3 (Pg. ID No. 412). Plaintiff claims that he also submitted a note from his psychiatrist to personnel in February 2014. Dkt. No. 27-5, p. 2 (Pg. ID No. 420). The February 14, 2014 note, which does not bear a time-stamp from the personnel office, merely states that Plaintiff "is under [the doctor's] care for a medical problem," "is limited to no more than 8 hours per day in the workplace," and will be reevaluated on "February 11, 2014."[5] *Id*. Plaintiff later submitted a note with similar language to the second doctor's note, dated on March 4, 2014. This third

---

from the employee who handled FMLA matters, stating he worked the days that Plaintiff allegedly submitted the medical documents and that there was no record of Plaintiff submitting the documents. Dkt. No. 25-8, pp. 2–3 (Pg. ID No. 244–45). It appears that Defendant is implying that Plaintiff stamped the documents himself and never submitted them, which he argues is false while conceding he did self-stamp one of the documents. *See* Dkt. No. 27, pp. 22–23 (Pg. ID No. 380–81); Dkt. No. 27-15, p. 9 (Pg. ID No. 494).

[4] Plaintiff claims to have no memory of seeing or signing the documents in 2008 due to the medication he was on at the time. Dkt. No. 27-3, p. 3 (Pg. ID No. 412).

[5] No explanation was provided as to why the date when Plaintiff's physician would reexamine him in the future—February 11, 2014—occurred three days before the letter was even written on February 14, 2014. Additionally, there was no explanation as to why this doctor's note, which Plaintiff alleges he submitted, did not bear the same time-stamp as the other two notes.

note, which bore a time-stamp from personnel, stated that Plaintiff "is under [the doctor's] care for a medical problem" and "is limited to no more than 8 hours per day in the workplace until further notice." Dkt. No. 27-5, p. 2 (Pg. ID No. 420).

Plaintiff was suspended again for eight days without pay in March 2014, for refusing mandatory overtime on six occasions in January through March 2014. Dkt. No. 25-2, p. 2 (Pg. ID No. 183). A disciplinary hearing in March or February marked the first time that Plaintiff informed Deputy Chief Tonya Guy that he was on medication and could not work overtime, explaining that his medical information was in his personnel file. *See* Dkt. No. 25-14, pp. 21–22 (Pg. ID No. 302–03); Dkt. No. 27-3, p. 5 (Pg. ID No. 414). Plaintiff refused to show his superiors a copy of the medical documentation.[6] *Id*. Guy was skeptical of the veracity of Plaintiff's medical condition because she thought he wanted to evade the day shift to rest before his other job coaching football at Wayne State University. Dkt. No. 25-15, p. 9 (Pg. ID No. 324). Guy attempted to corroborate Plaintiff's explanation by looking in Plaintiff's personnel file for his medical documentation, but she was unable to locate it since she was not aware it would be

---

[6] Plaintiff believed that it would be a HIPAA violation for his medical information to be shared with Guy. Dkt. No. 27, p. 17 (Pg. ID No. 375). Although Plaintiff does provide evidence of previous instances where medical conditions were shared, he alleges concern that sharing his medical documentation with his supervisors would lead to others learning of his condition. *Id*.

stored in a separate file. *Id.* at 19–20. Had Plaintiff shown Guy his medical documentation, Guy asserts that Plaintiff would not have been terminated. *Id.* at 20.

On April 14, 2014, Plaintiff's police powers were suspended and his gun and badge were taken away. Dkt. No. 27-3, pp. 6 (Pg. ID No. 415). Plaintiff left work early that day, telling Lieutenant Jason Bates that he did not feel well and was overwhelmed. *Id.* Plaintiff filed a charge with the Michigan Department of Civil Rights on April 21, 2014, stating that he had requested reasonable accommodation on April 13, 2014 and had not been accommodated because of his race and disability. Dkt. No. 27-14, p. 2 (Pg. ID No. 485).

Meanwhile, Plaintiff claims that several other employees were allowed to exercise FMLA rights to avoid working mandatory overtime. Dkt. No, 27, p. 11–12 (Pg. ID No. 369–70). Defendant identified four employees who were eligible under the FMLA to be exempt from ordered overtime: Rachel Lebendig, Arnold Oz, Jeremy Cady, and Robert Festerman. Dkt. No. 27-2, p. 7 (Pg. ID No. 403). Guy identified one of the four as a white female and another as a white male. Dkt. No. 27-17, pp. 7–8 (Pg. ID No. 515–16). Bates identified a third as a white male, but also identified two more officers currently receiving FMLA who were eligible to avoid mandatory overtime. Dkt. No. 27-16, p. 10 (Pg. ID No. 508). Both of the new officers Bates identified were African-American females. *Id.* Additionally,

Plaintiff claims another officer, Corporal Nicole Summers, who is white and had cancer, was allowed to work the front desk without overtime. Dkt. No. 27-3, p. 6 (Pg. ID No. 415). Defendant explained that Summers was assigned to the front desk because she was the highest seniority bidder, that she did in fact work overtime, and that she had completed the required FMLA forms. Dkt. No. 25, p. 30 (Pg. ID No. 179).

Finally, on May 6, 2014, Defendants terminated Plaintiff for two instances in March and April 2014 where he refused mandatory orders to work overtime. Dkt. No. 25-2, p. 2 (Pg. ID No. 184). Plaintiff's union pursued Plaintiff's grievances against Defendant to arbitration in September 2014. The arbitration award, issued in November 2014, noted that Plaintiff's transfer to Division Two lasted longer than it should have, but otherwise denied all of Plaintiff's grievances. Dkt. No. 25-14, pp. 15, 33–34 (Pg. ID No. 296, 314–15). The arbitrator found that Defendant had just cause to discipline Plaintiff for violating the rules and that the discipline issued had been appropriate. *Id*. at 20–21. Additionally, the arbitrator found Plaintiff's testimony to be "incredible" and that the medical documentation Plaintiff submitted did not explain sufficiently enough why he could work eight hours but no more. *Id*. at 24, 29.

It is with these contrasting positions regarding the factual background of this case that the Court must consider the instant Motion for Summary Judgment.

### III. Legal Standard

Federal Rule of Civil Procedure 56(c) "directs that summary judgment shall be granted if 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 779 (6th Cir. 1998). The court must view the facts, and draw reasonable inferences from those facts, in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986). No genuine dispute of material fact exists where the record "taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Ultimately, the court evaluates "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

### IV. Discussion

Defendant argues that it is entitled to summary judgment on all of Plaintiff's claims. *See* Dkt. No. 25, pp. 2–3 (Pg. ID No. 151–52). Defendant claims that Plaintiff has failed to make a prima case under the statutes for Counts I–II, IV–VI, and VIII–X. *Id*. Defendant also argues that Counts III and VII should be dismissed because Plaintiff is not disabled as defined by the ADA and PWDCRA. *Id*. at 2.

The Court finds that Defendant is entitled to summary judgment on Counts V and IX, but not on Counts I–IV, VI–VIII, and X. A detailed analysis is below.

### 1. Plaintiff's FMLA Claims

The FMLA affords an eligible employee up to twelve weeks of leave within a twelve-month period if the employee suffers from "a serious health condition" that makes him or her unable to perform the functions of his or her position. 29 U.S.C. § 2612(a)(1)(D); *Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 420 (6th Cir. 2004)."[A]n illness, injury, impairment, or physical or mental condition that involves . . . continuing treatment by a health care provider" qualifies as a "serious health condition."  29 U.S.C. § 2611. "An employee with a serious health condition may take intermittent leave or establish a reduced work schedule under the FMLA without fear of adverse employment actions taken by the employer as a result." *Festerman v. Cty. of Wayne*, 611 F. App'x 310, 314 (6th Cir. 2015). "Intermittent leave is leave taken in separate blocks of time for a single qualifying reason." *Adams v. Honda of Am. Mfg., Inc.*, 111 Fed. App'x. 353, 355 (6th Cir. 2004).

The Sixth Circuit recognizes two distinct theories for FMLA recovery: (1) the "entitlement" or "interference" theory, under 29 U.S.C. § 2615(a)(1); and (2) the "retaliation" or "discrimination" theory, under 29 U.S.C. § 2615(a)(2). *Hoge v. Honda of Am. Mfg., Inc.*, 384 F.3d 238, 244 (6th Cir. 2004). Since Plaintiff

-11-

asserts both interference and retaliation claims under the FMLA, the Court will address each in turn.

### a.  Plaintiff's FMLA Interference Claim

In Count I, Plaintiff asserts that Defendant's actions interfered with Plaintiff's right to FMLA leave, as prohibited by the statute. Dkt. No. 3, p. 12 (Pg. ID No. 32).

The FMLA prohibits acts by an employer that "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided [by the FMLA]." 29 U.S.C. § 2615(a)(1). Unlawful interference includes "refusing to authorize FMLA leave" or "discouraging an employee from using [FMLA] leave." 29 C.F.R. § 825.220(b). To establish a prima facie case of FMLA interference, an employee must show that:

> (1) the employee was an eligible employee;
> (2) the defendant was an employer as defined under the FMLA;
> (3) the employee was entitled to leave under the FMLA;
> (4) the employee gave the employer notice of his intention to take leave; and
> (5) the employer denied the employee FMLA benefits to which he was entitled.

*Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012).

In the present case, Defendant does not dispute that Plaintiff was an eligible employee and that Defendant qualifies as a FMLA employer. Dkt. No. 25, p. 17 (Pg. ID No. 166). Additionally, for the purposes of this motion, Defendant assumes

that Plaintiff suffers from a FMLA qualifying serious condition. *Id*. This claim then turns on whether Plaintiff provided sufficient notice to Defendant regarding his intention to take leave and whether Defendant denied Plaintiff FMLA benefits.

### i.   Whether Plaintiff Gave Defendant Notice Of His Intention To Take Leave

"[T]o invoke the protection of the FMLA, an employee must provide notice and a qualifying reason for requesting the leave." *Wallace v. FedEx Corp.*, 764 F.3d 571, 586 (6th Cir. 2014) (alteration in original) (quoting *Brohm v. JH Props.*, Inc., 149 F.3d 517, 523 (6th Cir. 1998)). "When an employee seeks leave for the first time for a FMLA-qualifying reason, the employee need not expressly assert rights under the FMLA or even mention the FMLA."[7] 29 C.F.R. § 825.303(b). Instead, the FMLA requires only that the employee "provide sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request." *Id*. "The employee's burden is not heavy." *Wallace*, 764 F.3d at 586. Rather, it is the employer who bears the burden of obtaining any additional required information that may be needed to establish eligibility. 29 C.F.R. § 825.303(b).

---

[7] Although this is not the first time Plaintiff has requested leave under the FMLA, there is a dispute of fact as to whether Plaintiff has any memory of requesting FMLA leave while under the influence of medication in 2008.

The sufficiency of notice "is an intensely factual determination." *Donald*, 667 F.3d at 761. Although merely calling in sick is insufficient to trigger an employer's FMLA obligations, 29 C.F.R. § 825.303(b), a note from the employee's physician may provide adequate notice. *See Brenneman*, 366 F.3d at 423 (noting that a doctor's note that details the qualifying medical condition that caused an employee's absence is generally sufficient notice). However, "[a] doctor's note that fails to state with specificity the condition behind the prescribed leave or the treatment to be administered . . . is insufficient on its own to provide notice to an employer of the employee's request for FMLA leave." *Festerman*, 611 F. App'x at 315. Where a doctor's note does not disclose the condition giving rise to a requirement of limited work hours or prescribed treatment, the district court should look to the surrounding circumstances for additional context and evidence of a potential FMLA-qualifying condition. *Id*. at 315–16.

Here, Plaintiff allegedly submitted three separate medical documents regarding his condition and an inability to work the mandatory overtime to the personnel office, as directed by Bates. Although the February and March doctor's notes were overly vague in that they only listed a restriction—that Plaintiff was not to work more than eight hour workdays—the January doctor's note listed specific conditions and noted that Plaintiff was receiving continuing treatment. Dkt. No. 27-4, p. 2 (Pg. ID No. 418) (disclosing Plaintiff's conditions as "atypical chest

-14-

pain," "sit[uational] anxiety," and "work related stress" and restricting Plaintiff to work no more than eight hours). *See also* Dkt. No. 27-5, p. 2 (Pg. ID No. 420); Dkt. No. 27-6, p. 2 (Pg. ID No. 422). Based off of the January note alone,[8] the notice that Plaintiff provided could be considered sufficient under 29 C.F.R. § 825.303(b), shifting the burden of obtaining further information and supplying the applicable leave forms[9] onto Defendant.

Furthermore, although Plaintiff did refuse to share his medical documentation with Bates and Guy, he did verbally inform them of his submission of medical documentation regarding his restriction during disciplinary hearings for refusal to work overtime. Defendant's argument that it was Plaintiff's job to follow-up on his submission of medical documentation misreads 29 C.F.R. § 825.303(b), which explicitly places the onus on the employer to obtain additional required information. While "it is undisputed that Plaintiff did not complete the necessary forms required by Defendant for an approved FMLA leave," Dkt. No. 25, p. 23 (Pg. ID No. 172), it was Defendant who failed to provide those forms to

---

[8] If Defendant intends to claim that it never received the January doctor's note, such a dispute of material fact is to be resolved by a jury.

[9] Defendant's brief provides the employer's policy that "[i]f an employee presented documents such as Plaintiff's documents, the normal process was that the employee would be handed a packet of [FMLA] forms to be completed." Dkt. No. 25, p. 21 (Pg. ID No. 170).

Plaintiff after he submitted medical documentation on three separate occasions. Plaintiff was not required to unequivocally request FMLA forms.

Accordingly, Plaintiff has raised a genuine issue of material fact as to whether he satisfied the FMLA notice requirements with the submission of his January 2014 doctor's note.

### ii.  Whether Defendant Denied Plaintiff FMLA Benefits To Which He Was Entitled

The final element a FMLA interference claim requires the employee to show that his or her employer denied the employee FMLA benefits to which he or she was entitled. *Donald*, 667 F.3d at 761. Because the FMLA is not a strict liability statute, employees seeking relief under the interference theory must establish that their employer's violation caused them harm. *Edgar v. JAC Products, Inc.*, 443 F.3d 501, 507–08 (6th Cir. 2006). Termination is one such harm that an employee can present. *See Arban v. W. Pub. Corp.*, 345 F.3d 390, 401 (6th Cir. 2003). Nevertheless, an employer may dismiss an employee lawfully, preventing that employee from exercising his or her rights under the FMLA, "if the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave." *Id*.

Although the "mere issuance of CIRs and scheduling of an administrative review fail as a matter of law to establish harm of the kind contemplated by the

FMLA," *Festerman*, 611 F. App'x at 318, Plaintiff also presented evidence of harm in the form of termination from his position. Thus, Defendant must provide "a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct." *See Edgar*, 443 F.3d at 508.

Defendant's stated reason for terminating Plaintiff was his repeated insubordination, for which he was subject to progressively greater disciplinary action. Dkt. No. 25, p. 23–24 (Pg. ID No. 172–73). However, this insubordination was based solely off the fact that Plaintiff refused to work the mandatory overtime.[10] *See* Dkt. No. 27-16, p. 3 (Pg. ID No. 501) (providing testimony from Plaintiff's supervisor that Plaintiff "did what he was supposed to do," with the exception of following orders to work overtime); Dkt. No. 27-17, p. 12 (Pg. ID No. 520) (stating that the reasons for Plaintiff's discipline were all linked to Plaintiff's refusal to work the day shift).

Plaintiff certainly qualifies as insubordinate for his refusal to work overtime prior to his medical restrictions going into effect at the end of January, since at that point in time the restrictions were self-imposed and developed without continuing treatment by a health care provider. However, the decision to terminate Plaintiff

---

[10] Plaintiff alleges that an isolated incident where a supervisor told him to "quit being a baby" is direct evidence of retaliatory animus. The Court does not find that such a comment is sufficient to qualify as direct evidence of any animus.

was not prior to Plaintiff's attempt to utilize the FMLA. *See Wallace*, 764 F.3d at 590 (noting that, in some cases, "cause to dismiss the plaintiff *before* he requested leave" "would be enough to allow an employer to fire an employee despite the FMLA.") (emphasis added). The Sixth Circuit has stated that "when the absences and cause for discharge relate directly to the FMLA leave," "there is no legitimate and independent reason for dismissal." *Id.* Accordingly, since Defendant's reason for terminating Plaintiff was for his refusal to work mandatory overtime, which appears to be directly linked with FMLA leave, the Court finds that Plaintiff provided sufficient evidence to establish a genuine issue of material fact as to whether Defendant interfered with Plaintiff's right to FMLA leave.

### b. Plaintiff's FMLA Retaliation Claim

Plaintiff asserts in Count II that Defendant's discipline and termination of Plaintiff for taking medical leave was retaliatory and a violation of the FMLA. Dkt. No. 3, p. 13 (Pg. ID No. 33).

The FMLA prohibits employers from discharging or discriminating against any individual for opposing practices made unlawful by the FMLA. 29 U.S.C. § 2615(a)(2). The Sixth Circuit applies the *McDonnell Douglas* burden-shifting framework to retaliation claims that turn on circumstantial evidence. *Festerman*, 611 F. App'x at 319; *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792

(1973). To establish a prima facie case of FMLA retaliation, an employee must show:

> (1) the employee was engaged in an activity protected by the FMLA;
> (2) the employer knew that the employee was exercising his or her rights under the FMLA;
> (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to him or her; and
> (4) there was a causal connection between the protected FMLA activity and the adverse employment action.

*Donald*, 667 F.3d at 761. "A plaintiff's burden in establishing a prima facie case is not intended to be an onerous one." *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 315 (6th Cir. 2001). A successfully pleaded prima case of retaliation results in the burden being shifted onto the employer to present a legitimate, non-discriminatory reason for its decision. *Donald*, 667 F.3d at 761. If the employer adequately carries this burden, then the employee must show that the employer's stated reasons are mere pretext for unlawful discrimination in order to survive summary judgment. *Id.* at 761–62.

### i. Whether Plaintiff Was Engaged In A FMLA Protected Activity

Here, Defendant terminated Plaintiff slightly more than three months after he first submitted medical documentation that he was restricted to working no more than eight hours per workday. From January 28, 2014—the date Plaintiff turned in the first doctor's note—to May 6, 2014—the date of Plaintiff's termination—Plaintiff was documented as refusing mandatory overtime at least

seven times. Dkt. No. 25-2, p. 2 (Pg. ID No. 183). Plaintiff asserts that his refusal to work mandatory overtime equates to asserting a right to work a reduced schedule[11] under the FMLA. Based on the facts presented, a reasonable jury could find that Plaintiff was engaged in an activity protected by the FMLA.

### ii. Whether Defendant Knew Plaintiff Was Exercising His FMLA Rights

Regarding the second element of a prima facie FMLA retaliation claim, the Court has already determined that Plaintiff provided sufficient evidence of notice to Defendant of his FMLA request, in the form of his request for reduced work hours via submission of the January 28, 2014 doctor's note, to avoid summary judgment. Accordingly, the Court's analysis will focus on the last two elements necessary to establish a prima facie case of FMLA retaliation.

### iii. Whether Defendant Took An Adverse Employment Action Against Plaintiff

To satisfy the third element of a prima facie case, Plaintiff must present evidence that Defendant took an employment action adverse to him after learning

---

[11] The FMLA does not limit eligible employees to requesting only periods of block leave, but also allows employees to take intermittent or reduced scheduled work. 29 C.F.R. § 825.203. "A reduced leave schedule is a leave schedule that reduces an employee's usual number of working hours per workweek, or hours per workday." 29 C.F.R. § 825.202.

of his exercise of FMLA rights. *Donald*, 667 F.3d at 761. The evidence presented indicates that Defendant made the decision to terminate Plaintiff after the submission of his medical documents and requests for a restricted workday. Accordingly, the third factor of the prima facie case of FMLA retaliation may also be considered to be satisfied, for the purposes of this motion.

### iv. Whether There Was A Causal Connection Between Plaintiff's FMLA Activity And The Adverse Employment Action

The final factor requires Plaintiff to state sufficient evidence that a reasonable jury could find a causal connection between Plaintiff's FMLA activity and the adverse action taken by Defendant. *Donald*, 667 F.3d at 761. As described above, in the FMLA interference analysis, Plaintiff has presented evidence that he was discharged for insubordination based directly on his request to work reduced hours, a form of FMLA leave. Thus, it is possible that a reasonable jury could find that Plaintiff's attempt to take FMLA leave bore a causal connection to Defendant's decision to terminate Plaintiff's employment.

### v. Whether Defendant Articulated A Legitimate, Non-Discriminatory Reason For Terminating Plaintiff

Since all four of the prima facie factors have been shown to be satisfied, the burden then shifts to Defendant to provide a legitimate, non-discriminatory reason for why Plaintiff was terminated. Again, as discussed in the FMLA interference

analysis, Defendant's proffered reason—Plaintiff's insubordination—was based solely on his refusal of direct orders to work more than eight hours per workday. Defendant does not allege any other conduct, outside of refusing mandatory overtime, which resulted in disciple for insubordination. Therefore, the Court finds that Plaintiff has presented sufficient evidence from which a jury could conclude that he was terminated in retaliation for requesting FMLA leave.

The Court denies Defendant summary judgment on Plaintiff's two FMLA claims.

### 2. Plaintiff's ADA and PWDCRA Discrimination Claims

In Counts III and VII, Plaintiff alleges violations of the ADA, 29 U.S.C. § 12102, and PWDCRA, MICH. COMP. LAWS § 37.1101, et seq., respectively. Dkt. No. 3, p. 13–15, 18–19 (Pg. ID No. 33–35, 38–39). The claims allege that Defendants discriminated against Plaintiff for his emotional disability in violation of state and federal law. *Id*. Resolution of Plaintiff's ADA claim will generally resolve Plaintiff's PWDCRA claim because the PWDCRA "substantially mirrors the ADA." *Donald*, 667 F.3d at 764. Accordingly, the Court will evaluate Plaintiff's ADA and PWDCRA claims together, under the ADA's framework.

Under Title I of the ADA, employers may not "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee

compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). "The ADA defines 'discriminate' to include the failure to provide reasonable accommodation to an otherwise qualified individual with a disability, unless doing so would impose an undue hardship on the employer's business." *Keith v. Oakland*, 703 F.3d 918, 923 (6th Cir. 2013); 42 U.S.C. § 12112(b)(5).

A plaintiff may establish discrimination by direct or circumstantial evidence. *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 547–48 (6th Cir. 2004). If the plaintiff fails to offer any direct evidence of discrimination, the court applies the three-step legal analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas* framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981). If the plaintiff succeeds, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its action. *Id*. Should the defendant carry this burden, the plaintiff must then have the opportunity to prove by a preponderance of the evidence that the employer's reasons are not its true reasons, but rather a pretext for discrimination. *Id*.

### a. Whether Plaintiff Has Presented Sufficient Facts For A Trier Of Fact To Find A Prima Facie Case Of Disability Discrimination

To make a prima facie case of disability discrimination, Plaintiff must demonstrate that:

(i)     he is disabled within the meaning of the ADA;

(ii)    he was otherwise qualified for the position, with or without reasonable accommodation;

(iii)   he suffered an adverse employment action;

(iv)    his employer knew or had reason to know of her disability; and

(v)     his position remained open while the employer sought other applicants or he was replaced.

*See Whitfield v. Tenn.*, 639 F.3d 253, 259 (6th Cir. 2011).

### i. Whether Plaintiff Qualifies as Disabled Under the ADA

The ADA defines a disability as "a physical or mental impairment that substantially limits one or more major life activities of such individual," "a record of such an impairment," or "being regarded as having such an impairment." 42 U.S.C. § 12102(1). Major life activities include caring for oneself, eating, sleeping, concentrating, thinking, communicating, and working. 42 U.S.C. § 12102(2)(A). In the ADA Amendments Act of 2008, Congress added rules of construction that the definition of disability should "be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter." 42 U.S.C. § 12102(4)(A).

"The determination of whether an impairment substantially limits a major life activity requires an individualized assessment." 29 C.F.R. § 1630.2(j)(1)(iv). Courts are to broadly construe the term "substantially limits" in favor of expansive coverage, so that it is not a demanding standard. 29 C.F.R. § 1630.2(j)(1)(i). The assessment is made by comparing the ability of the individual to perform a major life activity, as compared to most people in the general population. 29 C.F.R. § 1630.2(j)(1)(ii).

Here, Defendant disputes that Plaintiff suffers from a disability as defined by the ADA. Plaintiff's alleged disability is as follows: "a mental impairment that substantially limits one or more major life activity in that he suffered from a lack of appetite, restless nights, and could not work more than eight (8) hours per day." Dkt. No. 3, p. 14 (Pg. ID No. 34). Stated differently, Plaintiff alleges that his depression and anxiety substantially limited his ability to eat, sleep, concentrate, and work.

In the Sixth Circuit, an employee who is able to work full-time, but not overtime, is not substantially limited under the ADA in the major life area of working. *Linser v. State of Ohio, Dep't of Mental Health*, 234 F.3d 1268 (6th Cir. 2000) (holding that an inability to work more than eight hours per day did not constitute a disability). *See also Smith v. Grattan Family Enterprises, LLC*, No. 08-CV-14314, 2009 WL 3627953, at *9 (E.D. Mich. Oct. 30, 2009) ("Moreover, the

Sixth Circuit has repeatedly held that an inability to work overtime is not a substantial limitation on the ability to work."); *Garlock v. Ohio Bell Tel. Co. Inc.*, No. 1:13CV2200, 2015 WL 5730737, at *5 (N.D. Ohio Sept. 29, 2015) (finding that a plaintiff's inability to work overtime was insufficient to show a "substantial impairment of his ability to work, the ADAAA amendment not withstanding"). Accordingly, Plaintiff cannot succeed in claiming he is substantially limited in his ability to work.

Nevertheless, Plaintiff has presented sufficient facts to show that his mental impairments may have substantially limited him in the areas of eating, sleeping, and concentrating, since he alleged that he suffered from symptoms including situational anxiety and atypical chest pain due to stress. Accordingly, since Plaintiff has established that a reasonable jury could find him to be disabled under the ADA or PWDCRA, he must next present facts that he was otherwise qualified for the position, with or without reasonable accommodation.

### ii.  Whether Plaintiff Was Otherwise Qualified for His Position

To establish a prima facie case of disability discrimination, Plaintiff must present evidence that he was "otherwise qualified" for his position—i.e., that he could perform the essential functions of the job—with or without reasonable accommodations. The ADA and its regulations provide guidelines for determining whether a job's function is "essential." Section 12111 specifies that "consideration

shall be given to the employer's judgment as to what functions of a job are essential." 42 U.S.C. § 12111(8). Additionally, the Code of Federal Regulations provides a non-exhaustive list of factors that may be considered in determining whether a particular function is essential within the meaning of the ADA:

(i)     The employer's judgment as to which functions are essential;
(ii)    Written job descriptions prepared before advertising or interviewing applicants for the job;
(iii)   The amount of time spent on the job performing the function;
(iv)    The consequences of not requiring the incumbent to perform the function;
(v)     The terms of a collective bargaining agreement;
(vi)    The work experience of past incumbents in the job; and/or
(vii)   The current work experience of incumbents in similar jobs.

29 C.F.R. § 1630.2(n)(3).

"Whether a job function is essential is a question of fact that is typically not suitable for resolution on a motion for summary judgment." *Keith*, 703 F.3d at 926. The court's factual analysis "should be based upon more than statements in a job description and should reflect the actual functioning and circumstances of the particular enterprise involved." *Hall v. U.S. Postal Serv.*, 857 F.2d 1073, 1079 (6th Cir. 1988). While an employer's determination of what is essential should be given "consideration," the Sixth Circuit has clarified that this consideration does not equate to "deference" or a strong presumption in the employer's favor. *Rorrer v. Stow*, 743 F.3d 1025, 1042 (6th Cir. 2014).

-27-

At issue in this case is whether working more than eight hours per day was an essential function of Plaintiff's position. Most of the facts presented suggest that mandatory overtime was an essential function of Plaintiff's position, as required by his collective bargaining agreement. Dkt. No. 25-3, p. 2 (Pg. ID No. 202) (notifying employees that as of April 26, 2012, working a minimum of 40.5 hours per week and mandatory overtime were essential functions of the position). *See Festerman*, 611 F. App'x at 321 (noting that mandatory overtime was an essential job function at the Wayne County jail facilities in considering the plaintiff's FMLA claims). However, because Plaintiff presented some evidence that other employees were allowed to be exempted from mandatory overtime due to disabilities, a question of fact remains and a jury may determine whether working overtime was truly an "essential" function.

### iii. Whether Plaintiff Suffered An Adverse Employment Action

An adverse employment action is "a materially adverse change in the terms of [the employee's] employment." *Kocsis v. Multi–Care Mgmt., Inc.*, 97 F.3d 876, 885 (6th Cir.1996). "Termination from employment is an adverse employment action." *Barrett v. Lucent Techs., Inc.*, 36 F. App'x 835, 843 (6th Cir. 2002).

It is not disputed that Plaintiff was terminated for his continued refusal of direct orders to work overtime. Dkt. No. 25, p. 25 (Pg. ID No. 163). Accordingly,

Plaintiff has satisfied this prong of establishing a prima facie case of disability discrimination.

### iv. Whether Defendant Knew Or Had Reason To Know Of Plaintiff's Disability

The Sixth Circuit has held that "an employer cannot be said to know or have reason to know of an employee's disability where that employee returns to work without restriction or request for accommodation. The natural assumption in such a case is that the employee is fully fit for work." *Leeds v. Potter*, 249 F. App'x 442, 449 (6th Cir. 2007) (quoting *Hubbs v. Textron, Inc.*, 2000 WL 1032996, at *2, 2000 U.S. App. LEXIS 30465, at *7 (6th Cir. 2000)).

In the present case, Plaintiff's direct supervisors, who reprimanded him on numerous occasions for his refusal of direct orders to work overtime, may not have had actual knowledge of his disability. However, there is certainly an issue of fact as to whether they had reason to know of Plaintiff's disability, as Plaintiff presented evidence that he submitted numerous doctors' notes, listing restrictions, and verbally told them he had an unspecified medical condition that prevented him from working overtime. This factor is also deemed satisfied for the purposes of summary judgment.

### b. Whether Defendant Articulated A Legitimate, Non-Discriminatory Reason

As detailed in the FMLA analysis above, Defendant's proffered reason for terminating Plaintiff was Plaintiff's repeated refusal of direct orders to work mandatory overtime. Since Plaintiff's requested accommodation for his disability was to not work mandatory overtime, a reasonable jury could find that Defendant's reason for firing Plaintiff was based solely off of the accommodations Plaintiff requested. Accordingly, the Court finds that Defendant has not provided a legitimate, non-discriminatory reason for the adverse employment action against Plaintiff.

Drawing all reasonable inferences in Plaintiff's favor, there has been sufficient evidence presented to demonstrate an issue of material fact as to whether Plaintiff was subject to disability discrimination, in violation of the ADA and PWDCRA. The Court will not grant summary judgment to Defendant on Plaintiff's disability discrimination claims.

### 3.  Plaintiff's Title VII and ELCRA Discrimination Claims

Plaintiff alleges in Counts V and IX that Defendant violated Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2(a), and the ELCRA, MICH. COMP. LAWS § 37.2202. Dkt. No. 3, p. 16–17, 20–21 (Pg. ID No. 36–37, 40–41). The claims argue that Defendants discriminated against Plaintiff because

of his race—African American—while providing accommodations to similarly situated Caucasian employees. *Id.* Since discrimination claims under ELCRA and similar claims under Title VII share the same evidentiary framework, the Court will analyze Plaintiff's Title VII and ELCRA race discrimination claims together. *See Megivern v. Glacier Hills Inc.*, 519 F. App'x 385, 395 (6th Cir. 2013); *Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603, 614 n.4 (6th Cir. 2003).

Under Title VII, it is unlawful from an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). "The Michigan Elliott–Larsen Civil Rights Act forbids like conduct." *Kienzle v. Gen. Motors, LLC*, 903 F. Supp. 2d 532, 547 (E.D. Mich. 2012).

In the present case, Plaintiff alleges disparate treatment based on his race. "The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 153 (2000). A plaintiff bringing a Title VII employment discrimination claim must present either direct evidence of discrimination, or circumstantial evidence that allows for an inference of discriminatory treatment. *Johnson v. Kroger Co.*, 319 F.3d 858, 864–65 (6th Cir. 2003). Since Plaintiff has not presented any direct

-31-

evidence of discriminatory treatment, the Court must look to whether he has presented sufficient circumstantial evidence.

Like the FMLA and ADA, Title VII claims based on circumstantial evidence also utilize the *McDonnell Douglas* burden-shifting approach. *Id.* at 865–66. Plaintiff is responsible for presenting a prima facie case of unlawful discrimination, which Defendant may rebut by articulating a legitimate, nondiscriminatory reason for the challenged action. *Id.* at 866. If Defendant satisfies this burden, then Plaintiff must prove that Defendant's proffered reason was "actually a pretext to hide unlawful discrimination." *Id.*

### a. Whether Plaintiff Has Presented Sufficient Facts For A Trier Of Fact To Find A Prima Facie Case Of Racial Discrimination

Plaintiff establishes a prima facie case of racial discrimination by showing that: (1) he is a member of a protected group; (2) he was subject to an adverse employment decision; (3) he was qualified for the position in question; and (4) he was treated differently than similarly situated non-protected employees. *Russell v. Univ. of Toledo*, 537 F.3d 596, 604 (6th Cir. 2008).

Here, Defendant concedes that Plaintiff is a member of a protected group and that his discipline and termination qualify as adverse employment actions. Dkt. No. 25, p. 29 (Pg. ID No. 178). However, Defendant argues that Plaintiff was not qualified for his position, which included the essential functions of following

orders and working mandatory overtime, and that Plaintiff cannot demonstrate that he was treated less favorably than similarly situated employees outside the protected class. *Id*.

### i.   Whether Plaintiff Was Qualified for His Position

As the Court previously analyzed whether Plaintiff was qualified for the position under the *McDonnell Douglas* framework with regard to his disability discrimination claims, such analysis will not be replicated again here. Accordingly, for the purpose of this motion, the Court will assume that Plaintiff satisfies this element of his prima facie case of racial discrimination.

### ii. Whether Plaintiff Was Treated Differently Than Similarly Situated Caucasian Employees

"Similarly situated does not mean identical; it means that the plaintiff was 'similar in all of the *relevant* aspects.' " *Braithwaite v. Dep't of Homeland Sec.*, 473 F. App'x 405, 410 (6th Cir. 2012) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)). In *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992), the Sixth Circuit noted three relevant factors in determining whether employees are "similarly situated" in the context of alleged differential disciplinary action:

> the individuals with whom the plaintiff seeks to compare his/her treatment must have [1] dealt with the same supervisor, [2] have been subject to the same standards and [3] have engaged in the same

> conduct without such differentiating or mitigating circumstances that
> would distinguish their conduct or the employer's treatment of them
> for it.

*Jackson v. VHS Detroit Receiving Hosp., Inc.*, No. 15-1802, 2016 WL 700411, at

*5 (6th Cir. Feb. 23, 2016).

In the present case, Plaintiff argued that he was not granted FMLA leave to

avoid working overtime, while other employees were allowed to choose not to

work overtime with FMLA leave. Dkt. No. 27, p. 32 (Pg. ID No. 390). Three of the

four employees named in the Interrogatories as being eligible to use the FMLA to

be exempt from ordered overtime have been identified as Caucasian. Dkt. No. 27-

2, p. 7 (Pg. ID No. 403); Dkt. No. 27-16, p. 10 (Pg. ID No. 508); Dkt. No. 27-17,

pp. 7–8 (Pg. ID No. 515–16). Additionally, Bates testified in his deposition that

there were currently two employees, an Officer and a Corporal, receiving FMLA,

which enabled them to periodically be relieved of mandatory overtime. Dkt. No.

27-16, p. 10 (Pg. ID No. 508). Both of these individuals were African American.

*Id*. Plaintiff claims that all of the individuals granted FMLA leave suffered from

physical, as opposed to mental disabilities, but provided no evidence to support

that claim.

With regard to Corporal Summers, who Plaintiff alleges was allowed to

transfer to a front desk position without required overtime as accommodation for

her physical disability, Defendant presented facts, which Plaintiff did not dispute,

that establish she was not similarly situated. Dkt. No. 25, pp. 29–30 (Pg. ID No. 178–79). Summers was transferred to the front desk because she was the highest seniority bidder, continued to work required overtime in this position, and completed the required leave of absence forms. *Id.* Based on the facts presented, Summers was not similarly situated in all relevant respects to Plaintiff.

Plaintiff claims that "[a]t minimum, this is a factual dispute." However, on these claims, Plaintiff relies primarily on bare bones assertions of illegality, without providing the facts necessary to determine whether the other employees are similarly situated. The Court was not provided with information as to the position each of these employees held, whether these employees were supervised by Defendant's supervisors, whether these employees had similar disciplinary history in that they repeatedly refused orders to work mandatory overtime prior to submitting medical documentation and without completing FMLA paperwork, or whether there were any differentiating or mitigating circumstances that distinguished their conduct.

At the hearing, Plaintiff's counsel admitted that the facts on this issue were "fuzzy." The facts provided to the Court indicate only that six of Defendant's employees were granted FMLA leave, that they could choose to be exempted from working ordered overtime, and that four of the six were Caucasian. It does not

appear in the present case that there was disparate treatment because the Caucasian employees were not really comparable to Plaintiff.

Plaintiff bears the burden of providing enough evidence to sustain a prima facie case of racial discrimination past summary judgment, and he did not carry this burden with regard to establishing he was treated differently than "similarly situated" employees outside the protected group. Accordingly, the Court will dismiss Plaintiff's racial discrimination claims under Title VII and the ELCRA.

### 4. Plaintiff's Retaliation Claims Under the ADA, PWDCRA, Title VII, And ELCRA

In Counts IV, VI, VIII, and X, Plaintiff alleges that Defendant retaliated against him for engaging in protected activities, in violation of the ADA, 42 U.S.C. § 12203(a), PWDCRA, MICH. COMP. LAWS § 37.1602(a), Title VII, 42 U.S.C. § 2000e-3(a), and ELCRA, MICH. COMP. LAWS § 37.2101. Dkt. No. 3, pp. 15–22 (Pg. ID No. 35–42). The Court will analyze Plaintiff's disability and racial retaliation claims together, because "[r]etaliation claims are treated the same whether brought under the ADA or Title VII." *Penny v. United Parcel Serv.*, 128 F.3d 408, 417 (6th Cir. 1997).

### a. Whether Plaintiff Has Presented Sufficient Facts For A Trier Of Fact To Find A Prima Facie Case Of Retaliation

Retaliation claims based on circumstantial evidence are governed by the *McDonnell Douglas* burden-shifting framework. *Mickey v. Zeidler Tool & Die Co.*,

516 F.3d 516, 523 (6th Cir. 2008). To establish a prima facie case of retaliation, Plaintiff must show "(1) that he engaged in a protected activity; (2) that the defendant had knowledge of his protected conduct; (3) that the defendant took an adverse employment action towards him; and (4) that there was a causal connection between the protected activity and the adverse employment action." *Id.* (quoting *Weigel v. Baptist Hosp. of E. Tennessee*, 302 F.3d 367, 381 (6th Cir. 2002)). "The burden of establishing a prima facie case in a retaliation action is not onerous, but one easily met." *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000).

"If the plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to establish a legitimate, nondiscriminatory reason for the adverse employment action." *Penny*, 128 F.3d at 417. The plaintiff bears the burden of proving that the defendant's proffered reason for the adverse action was mere pretext for discrimination. *Id.*

### i.   Whether Plaintiff Engaged In A Protected Activity

Plaintiff's alleges that his protected activity included making "multiple requests for reasonable accommodation," by submitting several doctors' notes, and filing a charge with the EEOC on April 21, 2014. Dkt. No. 3, pp. 15, 17 (Pg. ID No. 35, 37); Dkt. No. 27-14, p. 2 (Pg. ID No. 485).

A plaintiff does not need to show that he or she is "disabled" within the meaning of the ADA to prevail on a disability-retaliation claim. *Bryson v. Regis Corp.*, 498 F.3d 561, 577 (6th Cir. 2007). Instead, a plaintiff need only show that he or she engaged in an activity protected by the ADA, such as requesting reasonable accommodations. *See id.*; *Hurtt v. Int'l Servs., Inc.*, 627 F. App'x 414, 422 (6th Cir. 2015) ("We have held that requests for accommodation are protected acts."). Since Plaintiff has presented evidence that he submitted doctors' notes in order to request the accommodation of being excused from mandatory overtime, he can be considered to have engaged in a protected activity under the ADA and PWDCRA.

Additionally, precedent shows that filing a charge with the EEOC constitutes a protected activity under Title VII and the ELCRA. *See Abbott v. Crown Motor Co.*, 348 F.3d 537, 543 (6th Cir. 2003); *Harris v. Heritage Home Health Care*, 939 F. Supp. 2d 793, 803 (E.D. Mich. 2013). Since Plaintiff filed a charge with the EEOC, alleging racial discrimination, prior to his termination, this act constitutes a protected activity under Title VII and the ELCRA.

Plaintiff has provided sufficient evidence of having engaged in protected activities under the ADA, PWDCRA, Title VII, and ELCRA.

-38-

### ii. Whether Defendant Had Knowledge Of Plaintiff's Protected Conduct

There does not appear to be a dispute that Defendant had knowledge of Plaintiff's EEOC charge and Plaintiff's claim that he was subject to harassment and a hostile work environment. Dkt. No. 27-14, p. 2 (Pg. ID No. 485); Dkt. No. 27-17, p. 13 (Pg. ID No. 521). Plaintiff has presented sufficient evidence that Defendant had knowledge that he engaged in protected conduct under Title VII and the ELCRA.

Additionally, although Plaintiff's supervisors may not have had actual knowledge of Plaintiff's doctors' notes, they may have had knowledge of his requests for accommodations from Plaintiff's verbal statements. *See Hurtt*, 627 F. App'x at 423 (concluding that good-faith verbal requests for accommodations, along with a doctor's note, were sufficient to notify an employer of a plaintiff's protected acts). Thus, Plaintiff has also provided sufficient evidence that Defendant had knowledge of his protected activities under the ADA and PWDCRA.

### iii. Whether Defendant Took Adverse Employment Action Towards Plaintiff

As analyzed above, Plaintiff has presented sufficient facts for the Court to find that his termination constituted an adverse employment action taken against him. Accordingly, this prong is also satisfied.

-39-

### iv. Whether there was a Causal Connection Between The Protected Activity And the Adverse Employment Action

A plaintiff shows a causal connection by producing sufficient evidence to infer that an employer would not have taken the adverse employment action, had the plaintiff not engaged in a protected activity. *Barrett*, 36 F. App'x at 841.

In the absence of direct evidence of the causal connection, a plaintiff can show causation by showing temporal proximity between the employer's knowledge of the protected activity and the adverse employment action. *Id.* "Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation." *Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497, 505 (6th Cir. 2014). However, where time has elapsed between the employer's knowledge of the activity and the adverse employment action, the plaintiff must provide additional evidence of retaliatory conduct to establish causality. *Id.*

"Title VII retaliation claims must be proved according to traditional principles of but-for causation," which "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013); *see also Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 649

(6th Cir. 2015) (noting that the Supreme Court in *Nassar* sought to prevent a lessening of the causation standard so that employees would not file frivolous discrimination charges to prevent undesired changes in employment).

Here, Plaintiff submitted his doctors' notes, requesting relief from mandatory overtime, on January 28, 2014, Dkt. No. 27-4, p. 2 (Pg. ID No. 418); March 5, 2014, Dkt. No. 27-5, p. 2 (Pg. ID No. 420); and sometime after February 14, 2014, Dkt. No. 27-6, p. 2 (Pg. ID No. 422). Plaintiff alleges that he provided his superiors with verbal notice of his request for accommodations at his February/March 2014 disciplinary hearing. Plaintiff filed an EEOC charge on April 21, 2014. Dkt. No. 27-14, p. 2 (Pg. ID No. 485). Defendant terminated Plaintiff on May 7, 2014.

Plaintiff was subject to discipline for his refusal to work mandatory overtime as early as August 2012, more than 500 days before he submitted his first accommodation request and more than 600 days before he filed his EEOC charge. *See* Dkt. No. 25, pp. 12–13 (Pg. ID No. 161–62). Defendant disciplined Plaintiff progressively, beginning with one-day suspensions in 2012 and working up to 8-day suspensions and eventual termination in early 2014 as Plaintiff's behavior continued. *Id*. Accordingly, the evidence shows that Plaintiff was disciplined both before and after his protected activity.

Nevertheless, Plaintiff has produced enough evidence from which a reasonable jury could conclude that his complaints about a hostile work environment and racial discrimination began before he realized his job was in jeopardy. His EEOC charge, alleging both race and disability discrimination, was filed only 16 days before his termination. Temporal proximity on its own may be sufficient to establish a causal connection for the purposes of a summary judgment motion.

Based on the principle that evidence must be construed in the light most favorable to the party opposing summary judgment, the Court finds that Plaintiff has presented a prima facie case of retaliation under the ADA, PWDCRA, Title VII, and ELCRA.

### b. Whether Defendant Provided A Legitimate, Non-Discriminatory Reason For Taking Adverse Employment Action

As detailed in previous sections, Defendant's proffered reason for terminating Plaintiff's employment was his continuous insubordination with regard to direct orders to work overtime. Defendants have not provided any other evidence that Defendant violated policy or otherwise had deficient work performance. Since Plaintiff's refusal to work overtime, based on his emotional disability, was the reason that he was terminated, the Court finds that Defendant has not provided a legitimate, non-discriminatory reason for terminating Plaintiff.

-42-

Accordingly, the Court denies Defendant's motion on Plaintiff's ADA, PWDCRA, Title VII, and ELCRA retaliation claims.

## V. CONCLUSION

For the reasons stated herein, the Court will **GRANT** in part and **DENY** in part Defendant's Motion for Summary Judgment [25]. The Court will grant the Motion as to Counts V and IX, which are dismissed with prejudice. The Court denies the Motion as to the remaining counts.

IT IS SO ORDERED.

Dated:        April 6, 2016

/s/Gershwin A Drain
HON. GERSHWIN A. DRAIN
United States District Court Judge
